Judgments affirmed. See journal entry. (Same journal entry in both cases.—Reporter.)
Journal entry: It is ordered and adjudged by this court, that the judgment of the said court of *610 appeals be, and the same is hereby, affirmed; for the reasons:
First. That the will of John Randolph, deceased, vested in William Leigh, as executor, full power, authority and discretion to determine the location, plans, methods and means of transporting and settling the manumitted slaves of John Randolph in some state or territory of the United States, other than the State of Virginia, in which state the testator resided at the time of his death, all of which not only appears by the direct terms of the will, but by the further provision therein, that “no inventory or appraisement be made of my estate, and no security shall be required of my said executor for the faithful discharge of the trust imposed in him, — his own character being the best security, and when that is wanting, all other is unavailing.” That in the exercise of the absolute and unlimited discretion so vested in him, the said William Leigh, as such executor, purchased after the death of John Randolph, the lands described in the petition, together with a large amount of other land adjoining and surrounding the same, for the evident purpose of settling the manumitted slaves of John Randolph upon this land, and in pursuance of such purpose undertook to transport them and settle them upon it, but that the people then living in the locality of these lands, with force and arms and by menaces and threats of violence, interrupted the transportation of these former slaves while en route to these lands and before they had reached the same, and compelled the said Wdliam Leigh, as executor, in the interest and safety *611 of these people to abandon these lands for the purposes for which he had purchased the same, and seek another locality, in which they might be settled in peace and safety. That the said William Leigh, executor, in the exercise of the discretion vested in him by the will of John Randolph, deceased, had the right and authority at any time before putting these former slaves in possession of these lands, for reasons which might be satisfactory to him, to abandon this location and select another in which Jo settle these former - slaves, and that the conditions that confronted him at that time and the necessity of making such change in location were so apparent, that he not only exercised a sound discretion in doing so, but in the interest of the peace and safety of these former slaves, he was absolutely compelled to make such change in his original plans, and seek another location for their homes. That the lands he had so purchased, and taken the title in his own name, having thereby become absolutely useless to him for the purposes for which he had purchased the s^me, he had full power and authority to sell and dispose of these lands, and apply the proceeds arising from such sale, to the cost of transporting and settling these former slaves in homes in other localities, and that in the absence of proof to the contrary, the presumption obtains that the funds were properly expended in accordance with the terms and provisions of the will, in so far as the amount received therefrom was sufficient for these purposes, and that these beneficiaries of the will of John Randolph received. *612 in full the benefits of all the funds arising from the sale of these lands.
Second. That said manumitted slaves of John Randolph never were put in possession or occupation of these lands, nor were the same or any part thereof ever allotted to any individual in such manner as to vest in any one of these individuals, any right, title, or interest in any specific part or parcel of this land. That but few of these manumitted slaves were entitled under the will of John Randolph, to receive land, and they could acquire no right or title in law or equity to any particular land until the same was specifically aparted or allotted to them. That the rights of those entitled to land were not rights in common, but individual and specific rights to particular lands after the same had been allotted to each in severalty, and after such allotment their rights thereto either at law or in equity must be established in a separate and individual action and not as a class.
Third. That John Randolph was never seized of these lands in his lifetime; that the title was taken in the name of William Leigh, executor, who was vested with full right and authority by the will of John Randolph, to dispose of the same before putting these manumitted slaves in occupation thereof and devote the proceeds of such sale to the same purposes for which he had acquired the land, and that if any trust arose in these lands by reason of the purchase of the same with trust funds, that trust was divested by their sale occasioned by the necessity of the conditions that confronted the trustee in his efforts to administer this trust prop *613 erly and effectively, and attached to the purchase money received therefor.
Fourth. That if under the laws of Virginia, it was necessary for William Leigh, executor, to obtain the consent and order of a court of competent jurisdiction to sell lands of which his testator had not died seized, but were purchased by the executor after the death of his testator in pursuance of the authority and discretion vested, in him by the will, the presumption obtains that such order and direction of a court of competent jurisdiction was obtained prior to the sale and conveyance of the lands, and that he fully accounted for the proceeds of the sale; that no evidence was offered to the contrary, and that by reason of the fact that the records of the proceedings of the executor and the settlements made by him were destroyed by fire when the court house in Richmond, Va., was burned almost fifty years before the commencement of- this action, the burden is upon the plaintiffs to prove by preponderance of the evidence that no such order was obtained and that no record thereof was ever made.
Fifth. That no evidence was offered tending to prove, that William Leigh, executor, had not fully, properly, and honestly administered his trust, according to intent and purpose of the testator and according to the terms and directions contained in the will of John Randolph, or that the beneficiaries of the trust created by this will have not received the full benefit of the entire trust fund including the part invested in these lands and restored to the trust funds from the proceeds'of their sale.
*614 Sixth. That it appears from the evidence, that these manumitted slaves were fully advised of their destination and of the fact that these lands had been purchased for their use in Mercer county, and if William Leigh as executor had no power or authority to sell said lands and apply the proceeds. of the sale of their uses in other localities, that his act in so doing was an open, notorious violation of his trust, known to them and acquiesced in by them at the time, and this action is barred by the statute of limitations.
Nichols, C. J., Wanamaker, Newman, Jones, Johnson and Donahue, JJ., concur.,
Matthias, J., not participating.